## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **CHRISTINA KRAGEL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 15-CV-383-PJC** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of the** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### OPINION AND ORDER

Plaintiff, Christina Kragel, seeks judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner" and "SSA") denying Kragel's applications for disability insurance benefits and for supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*   For the reasons discussed below, the Commissioner's decision is **AFFIRMED**.

### I. Procedural History

Kragel filed her applications for disability insurance benefits with a protective filing date of August 20, 2012.  She filed an application for Supplemental Security Income on August 28, 2012.  In both applications, she alleged onset of disability as of May 30, 2012.  Kragel claimed she was disabled due to headaches and neck pain.

The applications were denied initially and on reconsideration.  [R. 54-55, R. 74-75 ].  An administrative hearing was held before Administrative Law Judge ("ALJ") Edmund C. Werre on October 8, 2013.  [R.28-53].  By decision dated November 22, 2013, the ALJ ruled that Kragel had not been under a disability from May 30, 2012, through the date of the decision.  [R. 22-23].

The Appeals Council affirmed the denial on May 22, 2015.  [R. 1-3].  Kragel timely sought review by this court.

## II. Claimant's Background

Kragel was born March 28, 1966, and was forty-seven years old at the time of the ALJ's decision.  She has a GED and has received vocational technical training in secretarial work and customer service.  [R. 189].  She has prior work experience as a cashier, convenience store clerk, customer service representative, glass packer and housekeeper and most recently worked in shipping and receiving at a commercial manufacturing company.  [R. 190].

In an Adult Function Report completed September 17, 2012, Kragel reported she spends 99 percent of her time in bed, but also stated that she is able to care for her personal needs, prepares meals daily and does housework.  [R. 206-207 (Ex. 5E)].  She goes outside weekly, drives a car, shops for groceries weekly, and visits with her grandchildren weekly. [R. 208-209].  She stated that she can't be out very long because her medicines make her sleepy and her migraines are so painful.  [R. 210].  Bending over puts pressure on her neck, sitting makes her neck feel heavy and she has to lean her head back or hold it.  *Id.*  Noise intensifies her migraines, and the migraines are so intense she can't see or concentrate.  *Id.*  She can walk for thirty minutes and needs to rest for thirty minutes afterward.  *Id.*  A friend, Bettina Richardson, completed a Third Party Adult Function Report, in which she stated that Kragel spends ninety-nine percent of her time in bed but can cook, takes care of her personal needs, and does laundry weekly and dishes daily.  [R. 213-215 (Ex. 6E)].

At the hearing, Kragel testified that she can't walk more than twenty to thirty steps at a time because she is afraid of getting a migraine. [R. 35].  Even if she didn't get migraines, pain in her neck and shoulders would keep her from walking more than twenty to thirty steps.  [R.

36].  She can lift no more than a gallon of milk because of numbness in her hands and burning in her shoulders.  *Id.* She takes medications including morphine and Topamax, for her pain, and they all make her sleepy.  [R. 36-37].  Although the medicines help with the migraines, she has about twenty-five bad days a month.  [R. 37].  When she has a migraine, she has to stay in her darkened bedroom with no sound.  *Id.* She does not use alcohol or illegal drugs, but smokes about half a pack of cigarettes a day.  *Id.*  She used to smoke a whole pack, but has cut back in the last two months, at her doctor's advice.  [R. 37-38].  She has been hospitalized for her headaches, most recently on March 12, 2013, and before that on October 20, 2012.  [R. 38].

When Kragel gets migraines she gets nauseated and has blurred vision; the pain comes up the base of her neck all the way into her temples, down the back of her neck and across her shoulders.  [R. 39].  The migraines last from twenty-four to forty-eight hours. *Id.*  If she looks up, sees white and black spots and feels like she's going to pass out; when she looks down she gets a sharp pain in the back; and if she tries to lift her head back up, it feels like her head gets stuck. [R. 40].  When she moves her head to the right or left it gets stuck, and makes a sharp pop, and she has to try two or three times to bring her head back around to put it back in place.  [R. 41]. Dr. Hackl has recommended she needs a cervical rhizotomy but she doesn't have the money for one.  *Id.*  Reading a newspaper for more than five minutes makes her shoulders burn and her hands go numb; so does folding towels; the lights in the grocery store give her a migraine and once she threw up in the store.  [R. 42-43].  She spends ninety percent of her waking day, on average, lying down because of the migraines, the burning in her shoulders and the numbness in her hands.  [R. 43].  She tries to help out around the house but can't complete tasks when she gets a migraine.  *Id.*  She doesn't go to church anymore because the music is too loud and gives her migraines.  *Id.*  She last worked in May 2012 in a customer service position.  [R. 45-46].  She

had worked at the job almost three years but left voluntarily because she couldn't perform the job functions anymore. [R. 46]. She last saw Dr. Hackl a month or two ago. *Id.* She told the doctor she was having migraines every day, and that she had blurred vision and vomiting with them. *Id.* She wears sunglasses inside because of the light, and has done so in Dr. Hackl's office. [R. 47-48].

### III. Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520.[1] *See also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510. Step Two requires that the claimant establish that she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c). If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Listings"). A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to Step Four, where the claimant must establish that she does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account her age, education, work experience, and RFC, can perform. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

Cir. 2009) (detailing steps).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  *Lax*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation and quotation omitted).

Judicial review of the Commissioner's determination is limited in scope to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied.  *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004).

"Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion.  It requires more than a scintilla, but less than a preponderance."  *Wall*, 561 F.3d at 1052  (quotation and citation omitted).  Although the court will not reweigh the evidence, the court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Id.*

### IV. Decision of the Administrative Law Judge

In his decision, the ALJ found that Kragel met insured status requirements through  the date of the decision and, at Step One,  that she had not engaged in any substantial gainful activity since her alleged onset date of May 30, 2012.  [R. 15].  He found at Step Two that Kragel had had the severe impairments of degenerative disc disease; migraine headache syndrome; and tobacco abuse.  *Id.* At Step Three, he found that Kragel  did not have an impairment or combination of impairments that meets or medically equals the severity of any listing.  [R. 16]. He found that Kragel had the RFC to perform light work with no more than the occasional lifting up to twenty pounds; no more than the frequent lifting or carrying up to ten pounds; standing and/or walking six hours in an eight-hour workday; and sitting six hours in an eight-hour workday.  *Id.*

At Step Four, the ALJ determined that Kragel was capable of performing past relevant work as a customer service representative; cashier; and housekeeper.  [R. 21].  The ALJ concluded that Kragel had not been disabled from May 30, 2012, through the date of his decision.  [R. 22].

## V. Review

On appeal, Kragel argues that the ALJ improperly rejected the opinion of her treating physician, Dr. Hackl; that he failed to properly consider her credibility; and that his RFC assessment is not supported by substantial evidence.

## VI. Analysis

### A. Weighing of Treating Physician's Opinion

Generally the opinion of a treating physician is given more weight than that of an examining consultant, and the opinion of a non-examining consultant is given the least weight. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).  A treating physician opinion must be given controlling weight if it is supported by "medically acceptable clinical and laboratory diagnostic techniques," and it is not inconsistent with other substantial evidence in the record. *Mays v. Colvin*, 739 F.3d 569, 574 (10th Cir. 2014).   "When assessing a medical opinion, the ALJ must consider the factors listed in 20 C.F.R. § 404.1527(c)(2) and give good reasons for the weight he assigns to the opinion."  *Vigil v. Colvin*, 805 F.3d 1199, 1202 (10th Cir. 2015) (citations omitted).  When an RFC conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  SSR 96-8P (S.S.A.), 1996 WL 374184 at *7.  However, ultimately the ALJ—not a physician—is charged with determining the claimant's RFC.  20 C.F.R. §§ 404.1527(d), 416.927(d).  *See also Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).

In Medical Source Opinions dated October 30, 2012, and October 2, 2013, Dr. Hackl stated that Kragel had generally debilitating headaches every day, with each lasting more than four hours.  [R. 373 (Ex. 7F), R. 412 (Ex. 13F)].  He also completed a handicapped parking placard application in which he stated that Kragel is severely limited in her ability to walk.  [R. 375 (Ex. 8F)].  Additionally, in treatment notes dated May 6, 2013, he stated that Kragel "is incapacitated by her neck pain and headache," has "a very difficult time concentrating for more than a short period of time;" and "is unable to work in her present state, and she is likely to be like this for the next 12 month period."  [R. 392 (Ex. 11F)].

The ALJ found that Kragel had the severe impairments of, *inter alia*, degenerative disc disease and migraine headache syndrome.  However, he disagreed with Dr. Hackl's opinion regarding the disabling effect of the impairments, noting that an individual's RFC is not a medical issue, but an administrative finding, and "[t]reating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance." [R. 20] (citing Social Security Ruling 96-5p and 20 C.F.R. § 404.1527(e)).  He gave Dr. Hackl's opinion "only some weight" because the patient was noncompliant with treatment recommendation and because the doctor's opinion was inconsistent with other substantial evidence "as detailed above."  [R. 20-21].

He gave the opinions of the two state agency medical experts—Dr. Marks-Snelling and Dr. Wainer—"significant weight" because the doctors are deemed experts and highly knowledgeable in the area of disability and because their opinions were "well supported by medically acceptable clinical and laboratory techniques and largely consistent with the record as a whole." [R. 21].

The ALJ cited ample evidence supporting his RFC determination, including the following:

- In her September 17, 2012, Function Report, Kragel stated that she cooked daily, just as normal; performed household chores, including laundry, dishes, sweeping and mopping,

also just as normal;  went outside weekly, drove a car, shopped weekly for groceries; and visited her grandchildren weekly.   [R. 19, R. 207].

- Kragel testified in the hearing that her medication helps with her migraines, although it makes her sleepy. [R. 17, R. 37].  On March 28, 2012, she told Dr. Roman that darkness was a relieving factor for her migraines.  [R.19, R. 342].

- A bone scan performed on June 6, 2012, showed no increased uptake in the cervical spine; Dr. Hicks stated that claimant did not have symptoms of cervical nerve root or spinal cord irritation; physical examination showed no motor, reflex or sensory deficits in either upper extremity; and a cervical discogram performed on July 9, 2012, revealed none of the cervical disks reproduced any of the claimant's usual pain.  [R. 17, citing Exs. 1F, 2F, 4F, 12F].

- During a visit to Dr. Hicks on June 19, 2012, Kragel denied numbness or tingling in her arms.  [R. 18, R. 326].

- On August 17, 2012, cervical facet injections were administered; on her return visit on October 9, 2012, Kragel reported to Dr. Hackl that she had some relief with the injections with more mobility in her neck and less neck pain (though not as much with the headaches).  [R. 18, citing Exs. 4F, 5F].  Similarly, she had injections again on October 30, 2012, and reported on January 9, 2013, that she had some relief with the injections.  [R. 18, citing Ex. 5F].

- On January 11, 2013, when Kragel presented to the OSU Medical Clinic complaining of migraine, physical examination revealed only mildly reduced range of motion of the cervical spine. [R. 18, R. 366].

- On March 8, 2013, Jeffrey Hill, D.O., at OSU Physicians, told Kragel that because she was receiving narcotic pain medications from multiple other physicians routinely and recently, the clinic would not be prescribing her anything for pain.  [R. 20, R. 385].

- On May 6, 2013, Dr. Hackl told Kragel to quit smoking, which could be causing the worsening of her neck pain and headaches, that she was currently taking hydrocodone 40 mg a day; that "we do need to consider the risk of rebound headache;" and that she needed to take a "narcotic holiday."  R. 20, R. 392].  The ALJ commented that "[i]t does  not appear that Dr. Hackl knew that the claimant was receiving narcotic pain medication from "multiple other physicians routinely" at the time he completed the October 2013 form.

When faced with conflicting medical evidence, "[t]he trier of fact has the duty to resolve that conflict." *Richardson v. Perales*, 402 U.S. 389, 399 (1971).  Here, the ALJ did just that.  In doing so, he fulfilled his obligation to explain the weight he assigned to each opinion.  *See Vigil*, 805 F.3d at 1202.

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.  We may not displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

Kragel's argument that the ALJ should have given more weight to Dr. Hackl's opinion is essentially a request that this court re-evaluate the evidence, emphasizing the evidence that supports her disability claim and discounting the evidence that does not.  However, the court cannot reweigh the evidence.  *Newbold v. Colvin*, 718 F.3d 1257, 1265 (10th Cir. 2013).  While Kragel's case might be susceptible to conclusions that differ from those made by the ALJ, it is not the court's role to make findings in the first instance.  42 U.S.C. § 405(g) ("The findings of the Commissioner of the Social Security as to any fact, if supported by substantial evidence, shall be conclusive."); *Allen v. Barnhart*, 357 F.3d 1140, 1143-45 (10th Cir. 2004) (court acts within confines of its administrative authority).

### B. Credibility Determination

Kragel also challenges the ALJ's credibility determination.  "[O]nce the requisite relationship between the medically determinable impairment(s) and the alleged symptom(s) is established, the intensity, persistence, and limiting effects of the symptom(s) must be considered along with the objective medical and other evidence in determining whether the impairment or combination of impairments is severe."  SSR 96-3) (S.S.A.), 1996 WL 374181.  The ALJ found that Kragel's medically determinable impairments could reasonably be expected to cause her alleged symptoms; however, her complaints concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible.  [R. 17].

"[C]redibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations, when supported by substantial evidence." *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (internal quotation marks and citation omitted). Those findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (internal quotation marks and citation omitted). "[C]ommon sense, not technical perfection, is [the] guide" of a reviewing court. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012).

The ALJ, in assessing claimant's allegations of pain, was required to consider both the objective medical evidence and other evidence, including information about the claimant's prior work record, her own statements about symptoms, evidence submitted by her treating or nontreating source and observations by agency employees and other persons. 20 C.F.R. § 404.1529(c)(3). In making his credibility determination, the ALJ relied, *inter alia*, on the following evidence:

- In the administrative hearing, Kragel testified she cannot hold anything for longer than five minutes because her hands go numb; however on June 19, 2012, she denied numbness, tingling, or pain in her arms and physical examination showed no motor, reflex, or sensory deficits in either upper extremity. Further, Kragel never told any of her treating physicians that her hands go numb. [R. 18, R. 325-326].

- Kragel told Dr. Hackl on two occasions that the injections she received and her medication helped the pain, but told physicians at the OSU Medical Clinic that her medication did not help her headaches and she cried "all day every day" because the pain was unbearable. [R. 18, R. 383].

- Kragel told doctors at the OSU Medical Clinic that she had a TIA the previous fall; however, there is no evidence she ever experienced a transient ischemic attack. [R. 19, R. 369]. She also testified she had been hospitalized for headaches. [R. 19, R. 38]. However, there is no evidence in the record that she has ever been hospitalized for headaches. She was seen in the St. Francis emergency room on one occasion, but there is no evidence she was ever hospitalized for headaches. [R. 19, R. 393-410].

- In the Adult Function Report she completed on September 17, 2012, Kragel stated that she had no problem with her personal care and cooked daily like normal, did laundry and

10

dishes, swept, mopped, went outside weekly, drove a car, shopped for groceries weekly for 45 minutes and visited her grandchildren once a week.  [R. 19, R. 207-209].  However, she also stated that she spent ninety-nine percent of her time in bed.  [R. 19, R. 206].  In the administrative hearing, she testified that she tried to do housework, but could not do it and that her daughter helped her with both housework and personal care.  [R. 19, R. 43-45].

- On March 28, 2012, she told Dr. Roman that her headaches were not relieved by being in a darkened room.  [R. 19, R. 345].  During the administrative hearing, though, she testified that when she gets a migraine, she must go lie down in a cool, dark, quiet room for relief. [R. 37, 39].

- Kragel testified her medication caused drowsiness and sleepiness; however, in his October 2, 2013, medical source statement, Dr. Hackl indicated she had no medication side effects that caused functional impairment.  [R. 19, R. 412].

- Kragel testified at the administrative hearing that she spends ninety percent of her time in bed with twenty-five bad days per month; during these times she must be in a cool, dark, quiet room. [R. 19, R. 37, R.43].  She submitted three migraine headache diary forms covering every day for the period of January through September 2013.  [R. 19, R. 249-303].  The forms total fifty-two pages, go into great detail, and contain graphic descriptions of the headaches. *Id.*  The ALJ stated that her completion of the headache diaries on a daily basis for nine months with lengthy descriptions of her headaches is inconsistent with her testimony about the disabling effect of the headaches and "this inconsistency significantly reduces the claimant's credibility and is persuasive that she is more active than alleged." [R. 19].

As demonstrated above, the ALJ discussed the portions of the records he believed contradict Kragel's subjective statements, thus satisfying his duty to support his credibility finding with substantial evidence.  Accordingly, the court will not disturb the ALJ's decision.

## C. RFC ASSESSMENT

Kragel asserts the ALJ's RFC assessment was not supported by substantial evidence. Specifically, she argues that the RFC for light work with a twenty-pound lifting/carrying requirement, does not adequately account for the disabling effect of her migraines. However, both Dr. Marks-Snelling and Dr. Wainner considered Kragel's headaches in assessing her RFC, and both determined she could perform light work with the twenty-pound weight restriction.  The only other evidence on the issue was Dr. Hackl's medical source statements and Kragel's subjective

complaints.  As discussed above, the ALJ gave only "some weight" to Dr. Hackl's opinion about Kragel's functional limitations, and concluded Kragel's testimony about her functional limitations was less than fully credible.

Kragel's argument that the ALJ should have given more weight to Dr. Hackl's opinion is essentially a request that this court re-evaluate the evidence, emphasizing the evidence that supports her disability claim and discounting the evidence that does not.  The court cannot, however, reweigh the evidence.  *Newbold v. Colvin*, 718 F.3d 1257, 1265 (10th Cir. 2013).  While Kragel's case might be susceptible to conclusions that differ from those made by the ALJ, it is not the court's role to make findings in the first instance.  42 U.S.C. § 405(g) ("The findings of the Commissioner of the Social Security as to any fact, if supported by substantial evidence, shall be conclusive."); *Allen v. Barnhart*, 357 F.3d 1140, 1143-45 (10th Cir. 2004) (court acts within confines of its administrative authority).

**Conclusion**

For the reasons set forth above, the Commissioner's decision is hereby **AFFIRMED.**

**DATED** this 28th day of September, 2016.

Paul J. Cleary
United States Magistrate Judge